The clerk called the next case, please. Mr. Brooks, good afternoon. Good morning to the rest of the justices. I'm sorry. It's almost evening. Yeah. Please say it's not morning. As the clerk stated, my name is Lloyd Brooks. I'm here on behalf of the appellants, Johnny and Evelyn Perry, who are defendants in a mortgage foreclosure action in Will County. The matter that's before the court in this case this afternoon kind of goes to the core question of who gets to bring a mortgage foreclosure action in the state of Illinois, and then how do they prove that they're the appropriate person to bring that action. The briefs take many twists and turns trying to cover the subject matter, but one of the things I think is key here is that whether you believe that it was the plaintiff's initial burden here to prove that they were the appropriate party, or the Perry's duty to contest that, that at the summary judgment stage, there was a proper meeting of that burden in terms of the Perry's contesting whether or not the plaintiff was the proper party, and the trial court erred in not even letting the Perry's put on that defense. The error by the trial court started with its belief that if it was not a formally pled affirmative defense of lack of standing, then there could be no contest made whatsoever. But that belief by the trial court then caused it to refuse to allow the Perry's to supplement a brief. It then used that same line of reasoning to enter summary judgment despite the fact that the Perry's had denied the very allegation made by the plaintiff going towards capacity for which the plaintiff didn't put on any evidence. So if we start there, I think we arrive at the conclusion that at a minimum, a remand of this case has to happen because my clients should have been permitted to at least make the argument. The trial court believed that we weren't even permitted to make the argument because there was no formally pled affirmative defense. Now, kind of unraveling that, how did I arrive at that conclusion? As far as I'm concerned, there's two separate ways to get to the same space. I think the way the statute is laid out, and I'm referring to the IMFL, it actually starts with the plaintiff's burden, at least in this case. There's some jockeying back and forth between the parties about whether or not there's an obligation on the plaintiff to plead capacity. I think that argument is really somewhat of a red herring because regardless of whether or not the statute makes it mandatory for all foreclosures, it certainly sets it out if you're going to use what we call the statutory form complaint, the short form complaint. As I'm sure your Honors are well aware, the IMFL contains a provision that sets forth standard set of allegations to be made if you want to use them. If you use them, one of the mandatory allegations is what is the plaintiff's capacity? It specifically uses the term capacity in the statute. Here, there's no doubt that Aurora Bank was trying to use the statutory form complaint, that it in fact made an allegation that it had the capacity to foreclose. It said that it was the assignee of murders and that it had permission of the owner of the note, or authorized by the owner of the note, to enforce the note. Was the assignment attached to the complaint? You know, your Honor, I believe that Aurora Bank has certainly alleged that it was attached to the complaint off the top of my head, to be honest. I don't know if it was attached to the complaint, but it's certainly in the record. So at some point, Aurora Bank did produce that assignment, but off the top of my head, I don't recall if it was actually submitted. Because other cases come to my mind where the assignment is actually produced and filed after the foreclosure complaint. And sometimes it's filed without a date on it. It's kind of a very loose practice, this assignment. Your Honor, I've been defending foreclosure cases now for about a dozen years, and it's certainly been my experience that there is no set practice as to how these assignments are either prepared, filed, or recorded. They do range all over the map. And that is somewhat troubling, specifically because so many trial courts rely on this single document as, aha, here's the evidence, this must mean that you're the proper party. But going back to this case, the issue here is they did in fact plead that they were the S&E. And my clients, through prior counsel, specifically and very clearly denied that allegation. I think it would really be a strain for anyone to think of what type of litigation you would be involved in where a plaintiff makes an allegation, the defendant denies that allegation, but somehow now the plaintiff does not have to prove the allegation now that it's been denied. I think that's just generally accepted practice. It's in the Code of Civil Procedure that way. And certainly in the IMFL, there's provision that covers this as well. And it's 15-1506A. It's the provision of the IMFL that covers the evidence to support a judgment. The first paragraph, the first sentence of that provision starts off with a statement to the effect of the plaintiff must produce evidence of the allegations in its complaint in open court with the exception of, and then it goes on to talk about circumstances in which the plaintiff doesn't have to do that. For the most part, it's defaults or some other kind of judicial admission has been made. So I take that sentence to mean Aurora Bank has pled its what it believes supports it having capacity to foreclose. My clients denied that. Under 15-1506A, Aurora Bank now has to prove it. Now why do I go through all of this? Because the key to this case is whose burden was it at the time of summary judgment to have either proved or disproved Aurora Bank being a proper party, and under what guise had that to be done? Here, the trial court completely ignores 15-1506 and says, no, you had to have pled an affirmative defense of lack of standing, and without that formally filed pleading, you have automatically waived any arguments having to do with it, despite the fact that I did inform the trial court to remind it that my clients had denied that same very allegation from the complaint. Despite that, the trial court felt regardless of the allegation and the complaint, it needed to be an affirmative defense. Now, as I point out in my briefs, there are courts in this state that are kind of all over the map when it comes to this issue in terms of whose burden it is. There are several courts, no doubt, that have held that it is supposed to be an affirmative defense. They refer to it as standing and say that it's to be pled by a defendant in an affirmative defense. Well, I take issue with that line of cases being applied here. For one, the genesis of it is an Illinois Supreme Court case by the name of Greer v. Illinois Housing. It's not a foreclosure case. True, that that is the general rule for most forms of litigation, but that's because in most forms of litigation, the plaintiff has no duty to plead a set of facts to support how it had standing the suit in the first place. That's the general rule, but this is a mortgage foreclosure case governed by the IMFL, where there is a provision where the plaintiff does have to assert how it came to have the capacity to bring the mortgage foreclosure case. In my mind, in the plain reading of the statute, we are now out of an area where the plaintiff can take advantage of the fact that it's not pled as an affirmative defense. You had to plead it yourself as the plaintiff. So for that reason… What did they plead in here? I'm sorry, Your Honor? They pleaded to pass his mortgagee through an assignment, didn't they? They did, and that goes to my point. The moment they did that, he removed this case from one in which my client had to state it as an affirmative defense that they did not. They've already alleged that they are. Now, in normal pleading practice, all I have to do is deny that fact, which is what my clients did. So at that point, we're at issue, and my clients now should be able to test that allegation. The trial court didn't see it that way. The trial court ruled this has to be specifically listed as an affirmative defense. So that's my first contest to how the trial court arrived at this decision. The second one was, even if you did believe it should have been pled separately, as in a stated affirmative defense, the trial court here still arrived at the wrong conclusion that it was automatically waived because it was not. And one thing I took from the briefing here is even Aurora Bank doesn't contest that the stating of an affirmative defense is covered by the Code of Civil Procedure. And if I'm not mistaken, off the top of my head, it's 2-613 that covers the pleading of an affirmative defense. Even the statute does not require every affirmative defense to be pled in a formal pleading. It specifically says ones in which it would catch the plaintiff by surprise. That's in the statute. So by its very statement, it suggests that there are affirmative defenses or situations in which the affirmative defense does not have to be formally pled in order to be asserted. Well, here when you have a case where the plaintiff has already alleged, I have capacity, the plaintiff itself brought the issue to the table. It can't be reasonably argued that they're somehow now surprised that my clients say, perfect. I don't feel that even if it is going to be held to be an affirmative defense, that under these circumstances, that it is considered automatically waived. And I think that's key here because the trial court didn't use any discretion here to determine whether or not it should or shouldn't be stated. The trial court came to the legal conclusion that it was automatic. And that's throughout the record of several pages of the oral argument of the two hearings that related to this issue. The trial court on more than one occasion said this is automatically waived. The trial court didn't say, well, I just don't think it's appropriate. Or in another circumstance, I might have considered it. The trial court made it very clear that he felt it was automatic. Now, because of that, my clients then weren't given leave to amend, even though during the oral argument, I suggested to the court, if you really do believe that this has to be a formally pled affirmative defense, then you still have the discretion to grant me leave to do that. The trial court, again, felt that that wasn't appropriate because the waiver was automatic in the trial court's words. Mr. Brooks, do you have any cases that show that there are some affirmative defenses that don't need to be pled? Your Honor, I believe there were a couple of cases cited in the opening brief where we block-quoted 613, which is where the affirmative defenses are laid out in the costal procedure. And I believe there are a couple of cases that do discuss what types or the timing of the filing of an affirmative defense. I do not recall off the top of my head any particular case where there is a bold statement that you do not have to file an affirmative defense but the statute clearly says that. That it lays out a list of examples of types of things that could be asserted as an affirmative defense and then specifically states that the affirmative defense is to be pled if it would catch the opponent by surprise. And I think there are plenty of cases that say the waiver isn't automatic. That's also the case as well. So from that perspective, again, is why I believe the trial court erred here because the trial court reached the conclusion that the waiver was automatic. So there was no discretion in the trial court's mind as to whether or not to accept it or not. The fact that it wasn't pled in the answer, and I shouldn't say it that way, because my position is it was pled in the answer. My clients denied the allegation. But there was not a separate section in their affirmative defense where they contested standing. Can I ask you just one more question? Sure. It appeared a couple of minutes ago like you were making a distinction between capacity and standing. Are you arguing that those are two different things? I do argue that. And the reason I try to clarify that is because many courts use the phraseology of standing. In fact, this court's done it in private decisions. Heck, I've allowed the word standing occasionally to slip out of my mouth when it's for pleading to that file on this issue as well. But the reason I think the distinction may need to be made is because the IMFL uses the word capacity. And that is the allegation that my clients are attacking. So to the extent that one court may say, well, if you're going to call it a lack of standing, then it does need to be an affirmative defense, then I'm seeking to avoid that because I'm not going after a separate doctrine about who has an interest in a loan or not. I'm arguing that this plaintiff has alleged capacity. And I'm sure your honors have read the brief. You're well aware the IMFL sets out which kinds of parties have capacity. Essentially, I like to say it's two people, which it turns out to be everybody. It's either the holder of the note or the holder's agent. You've got to be one of those two things. That's the only thing that will give you capacity. And I think kind of answering your question, the reason I think there's a distinction is because generally speaking, the courts define standing as someone having an interest in the litigation. Well, using that broad terminology here might be deceptive because the owner of the note, the person who actually owns the debt, may not hold that note. And I'm sure your honors have sat on many cases involving mortgages and notes, and you understand that distinction. That's two completely different concepts, holding the note and owning the note. The owner of that note clearly has some interest in collecting the money and how that note's being enforced. But under the IMFL, the owner of the note, if that's all they are, could not foreclose unless they're also the holder of that note. And for that reason, standing and capacity may not be the same thing. Because you can have that capacity to foreclose and not have an interest in the note, or vice versa. You can have an interest in the note, but still not have the right to foreclose if you're not the holder. And I think that's one of the distinctions I want to make clear here is we're attacking Aurora Bank's allegation that it had capacity. And it relies mostly on now that it got an assignment from MERS. And it believes that simply getting that document in and of itself now not only was proper proof, but essentially irrefutable proof, apparently, that it had the capacity. And we addressed that in the briefs that that's not clearly so. What is it as an assignee in your view? Well, the assignment in this record does two things. It attempts to assign a mortgage and the note. And I do spend some time in the brief attacking this notion that somehow MERS had the note to ever assign in the first place. And I think that's what troubles me about the use of that document at all is that clearly this document, in my mind, was not drafted in such a way to actually characterize whatever transaction was actually occurring, if there was one at all. Again, we didn't get to test that because the trial court wouldn't let us. To the extent that it is assigning the mortgage, in my mind, looking at the statute and its definitions, it's irrelevant. I don't care who holds the mortgage. I care whether or not you're the note holder or the note holder's agent. Simply telling me that you're the proper mortgagee of record does not automatically mean the note holder sent you here to foreclose, because that's what you need to be. The agent has to be assigned by the principal. Here, we don't even know who the principal was. Again, the trial court wouldn't let me test that. How can I know you're an agent if I don't know who the principal is? Aurora Bank never had to answer that question. They never had to say, we're the agent of whomever. It was never a part of the record. So I think that's another reason why it needs to be remanded, because those questions weren't allowed to be asked, because, again, the trial court reached the conclusion that, without the formally pled affirmed defense, I couldn't ask those questions. So it really boils down to that's an allocation of the capacity, but who has to prove it? That is correct. And because it's a part of the complaint, and IMFL specifically contains a provision that states, the plaintiff must prove the allegations in its complaint with admissible evidence, I think that takes care of that question. So in summary judgment, I could simply rest on my client's denial of that allegation and wait for Aurora Bank to prove it. The trial court didn't see it that way. The trial court felt that the burden was completely reversed, and even then I could not embark to live up to that burden without having formally pled affirmed defense first. I do see my time is up. I'm more than happy to answer questions. I do have a question, and I may embarrass myself, but that's why I like these arguments. Can you tell me what MERS is? Can I tell you what MERS is? What is MERS? Is it a servicing company that collects payments? Well, in this record, MERS did nothing that we could tell. They certainly didn't collect payments. Aurora Loan Services LLC collected payments, which gets into another issue in the case, because Aurora Bank is the plaintiff, but Aurora Loan Services, there's evidence that they acted as the servicer, which contradicts Aurora Bank's allegations, but again, we weren't allowed to go there because the trial court cut us off. Can I answer my question? Yes. MERS acts as this computerized registry system. That's it. It's a database where they keep track of mortgage documents. So what can they assign? I think they probably do have, because they did become the legal title holder of that mortgage, that they have the right to assign that legal title to someone else. The problem is that's a very naked assignment when it comes to the IMFL, because there's nothing about that that says the owner of, I'm sorry, the holder of that note either directed that assignment or that the person you assigned it to is now acting as the agent of that note holder. And I think as far as the IMFL is concerned, that's the struggle I have with a MERS assignment, is that by itself still doesn't tell me who's the note holder and if there's a note holder's agent involved. Do I understand the facts correctly that it was a MERS assignment attached to the complaint? Again, I will check that when I sit down, but I certainly know that Aurora Bank has stated that they did that, and I believe that that is the case, that an assignment was attached to the complaint. Thank you. Thank you, Mr. Brook. Thank you, Justice. Mr. Carrick? Good afternoon. Good afternoon, Your Honors. Counsel, may I please the Court? My name is Jeff Carrick. I'm here on behalf of the Plaintiff Pelley Nation Star Mortgage. Who was not the named plaintiff. There was a substitution. There was a substitution. I'm sorry, Your Honor? It just seems curious to me. There was a transfer of servicing from Aurora Bank to Nation Star Mortgage, LLC, which is why the substitution took place at the... Who prepared the foreclosure complaint? Near the end of the complaint. The firm that handled the foreclosure was Dutton & Dutton, Your Honor. We came in on the appeal. So I'll try to be nice then. I appreciate that, Your Honor. Counsel makes a number of arguments. Good arguments, I think. But they tend to complicate what I believe is a pretty straightforward case here. Is that, don't confuse me with the facts? Exactly, Your Honor. He talks about the courts in Illinois kind of being all over the place on this issue. But if you look at the briefs and you look at the case law, that really isn't the case. The courts are uniform, including this court in the Schnick case, in holding that lack of standing is an affirmative defense that must be pled and proved by the defendant alleging lack of standing. Was it Schnick a default case? It was a default case, Your Honor, yes. But that doesn't change the fact that the burden lies with the defendants. But the defendants in Schnick did nothing because they defaulted and they didn't appear. It is a little bit distinguishable that the defendants here filed an answer and denied. They did, Your Honor, but they did not. I take that back. They did file an affirmative defense, but they filed an affirmative defense of fraud. They never filed an affirmative defense asserting standing. But they did deny the capacity to sit. They denied the capacity, but that's a separate issue here. And that doesn't, there's no case law that says, there's nothing that says it's been cited by the defendants that shows that merely denying the capacity allegation obviates the need to then prove that affirmative defense or plead that affirmative defense, which makes sense because the allegation of Aurora's standing, excuse me, of their capacity in the complaint, was that they are the mortgagee and that they are designated and authorized to act on behalf of the owner of the note and to enforce the note and mortgage at issue. Do they identify the owner of the note? It is not identified in the complaint. In the complaint? No, Your Honor. There's just a blanket denial of that allegation. So we don't even know what they're denying. Maybe they're denying that... Who does the complaint allege is the owner of the note? I'm sorry, Your Honor. That was, I thought we had just asked. It doesn't allege who the owner of the note is. And does the law require that the person who brings the action be the owner of the note? No, Your Honor. Under Murs v. Barnes, it's clear that the action need not be brought by the owner of the note. And then 15043N, it states, you know, capacity which the plaintiff brings to foreclosure indicate whether it's the holder of the indebtedness, a pledgee, an agent, or trustee under the deed of trust. So who's going to have that information as to who's holding the note? The person that borrowed the money or the person that made the loan? Well, the... I'm just thinking from a practical point of view. How does a homeowner prove who the holder of the note is? Well, the homeowner is entitled to receive that information. If they make a written request to the loan servicer, they will tell them who the owner of their note is. So how hard would it be to include that information in the complaint? I suppose it certainly could... I promised I wasn't going to beat you up and I know you didn't prepare the complaint. It certainly could be included, Your Honor, but the fact that it's not required to be included under either Illinois mortgage foreclosure law or under the case law. And I would just like to point out as well, I think counsel narrows the definition of mortgagee a bit too much. He seems to indicate that it's only a holder or the holder's agent. The statute says it's the holder of the indebtedness or obligee of non-monetary obligations secured by the mortgage or anyone authorized to act on their behalf and any person claiming through a mortgagee as successor. It's not as limited as counsel suggests. And to answer Justice Wright's question for counsel, the assignment is attached to the complaint. I thought I flagged it. Yes, it's page 28 and 29 of the record. So the assignment, this isn't a case where the assignment magically shows up several weeks or months after the complaint is filed. Or the default judgment is entered. Exactly, Judge. It is attached to the complaint here. Again, getting back to kind of what happened here, the answer in the affirmative defense of fraud was filed in December of 2011. The plaintiff filed the reply. Then in May of 2012, the motion for summary judgment was filed. Again, there was no request to file an amended pleading prior to that. They filed a response to the motion for summary judgment, which was just very basic, filed by defendant's prior counsel that simply said that the plaintiff had not met its burden of proving that it was a mortgagee and therefore did not have standing. Again, improperly shifting the burden, we argue, onto Aurora and providing no evidence whatsoever of its own to say why Aurora was supposedly deficient merely stating that it was. In October of 2012, getting ready for summary judgment, new counsel came in, did request leave to file a supplemental response to the motion for summary judgment, but again, did not request leave to file an amended pleading. At that time, never formally requested leave to file an amended pleading with a motion for post-amended completing attached. Additionally, even if they had, it would have been within the court's discretion to deny the amendment at that late stage in the game. The right to amend pleadings is, of course, not unlimited. In fact, in Bank of America v. Land, one of the cases counsel relies on, it's very factually similar where the case, the affirmative offenses were filed and they ended up being stricken. The plaintiff filed a motion for summary judgment. At the hearing for motion for summary judgment, the defendant moved for leave to file an amended pleading to assert a standing offense and the judge denied it at the hearing. It was untimely. It went up to the appellate court and the appellate court found it was not an abuse of discretion for them to deny the request for leave to file an amended affirmative defense at that time. Similarly here, counsel harps on the fact that the court found that it was an automatic waiver, but if you look in denying the, again, there was never a request for a file an amended affirmative defense, but in denying the request for the supplemental response to the motion for summary judgment, the court was clear that it believed it was untimely and prejudicial and we cite to the portion of the record that states that. So again, the case law is clear and they had the burden to plead and prove their affirmative defense with lack of standing. They did not do so. We argue that that argument then is forfeited. The analysis can stop right there. However, even if we did have the burden to plead and prove standing, the record shows that Aurora did meet that burden. As we discussed, it alleged in the complaint that it is the mortgagee. It attached a copy of the note endorsed in blank to the complaint. It attached a copy of the mortgage to the complaint and it attached a copy of the assignment mortgage to the complaint. The original mortgage, correct? I'm sorry, Your Honor? It attached a copy of the mortgage? Well, it attached, I mean, it wasn't literally the original to the complaint that was filed. What original document was attached to the complaint? They were all, they were copies. Did I say original? I apologize if I did. Well, I'm asking you. They were all copies? They would be copies, yes. The originals typically would be stored in safes, Your Honor. But isn't the note a bearer note? The note is endorsed in blank. That's a bearer note? Yes, yes, Your Honor. Okay. What is there to establish? You actually have it. Well, Your Honor, the courts, Rosa Stone, and another one that's slipping my mind right now, state, as we allege in our brief, that this is prima facie evidence of the right to enforce the note in mortgage, which was never rebutted by defendants. As long as you have a photocopy of it. Well, under Illinois law, that's correct. This is not a show-me-the-note state, as the case law says as well. You're not required to come in with the note, although I will add and candidly this is not in our brief. I did not see this one line until preparing for oral argument, but at the December 5th motion for summary judgment hearing report of proceedings, page 27, counsel for Aurora and the trial court said, as he was presenting his motion for summary judgment, said, I also have the original documents. Unfortunately, there's no further explanation of that or statement as to what was shown, but it's hard to imagine what those original documents could possibly have been if not the original note and mortgage. Counsel, was that the hearing perhaps? We can't surmise that. Well, it's in the record that they're the original documents, Your Honor. Again, it's hard to imagine what they might be if not the original note and mortgage. So again, and also the affidavit attached to the motion for summary judgment states explicitly that it attaches a true and correct copy of the original note and it alleges that Aurora was entitled to enforce the note. The affidavit went unrebutted. The response to the motion for summary judgment, again, not filed by counsel, filed by the prior counsel, was very basic, simply stating Aurora has not met its burden, demonstrating it was a mortgagee. It does not state what is insufficient about the evidence. It does not go on as counsel attempts to do, and we've argued that it's waived. It argues specific defects supposedly in the affidavit. It does nothing. They basically just say despite what the case law says, it's not our burden, it's your burden, you didn't meet it, despite the fact that there is, again, all this documentation and all this evidence demonstrating that Aurora did have standing and was the proper plaintiff in the complaint. Mr. Kerrigan, one question. Certainly. What is there to advise the defendant in one of these cases that capacity is the same thing as standing? I apologize, Your Honor. I'm not sure I follow your question. The statute refers to capacity, right? Certainly. And it says that you had to plead capacity. Well, again, the statute says that the complaint may substantially follow that form. We would, again, argue that it's not a mandatory requirement here. Certainly, capacity was pled in the complaint. What is it that alerts I mean, we get a lot of these cases that are pro se. What alerts a pro se defendant that the capacity is also an allegation of standing and that one has to challenge standing? I don't know that it is also an allegation. It's stating the capacity in which the plaintiff has to bring the lawsuit. I'm not sure it's also an attempt to demonstrate standing. I guess if you're asking how would a pro se defendant know that it's an affirmative defense that they must plead and prove, I don't know the answer to that question. I guess there are a lot of areas of law. It's a risk defending yourself in any action. Exactly, Your Honor. A pro se defendant probably is going to miss certain issues and perhaps that issue. But that's part of the risk of going pro se. Well, what is it that alerts a lawyer that capacity is the same thing as standing? Again, I'm not sure that they are the same thing as far as what alerts the lawyer. There's ample case law on this issue. Any attorney practicing in this field should certainly be well aware that they must plead and demonstrate lack of standing as an affirmative defense if they're defending a mortgage foreclosure case. Okay. As I understand Mr. Brooks' argument, he's saying that the statutory form which you filed, your client filed, requires a showing of capacity. So there was an allegation of capacity. In the answer there was a denial of capacity. What is it that alerts somebody that they also have to plead and prove the affirmative defense of lack of standing? I guess it would be the same thing that would alert anyone of any other affirmative defense. Statutory limitations defense, for example, you would be required to look and see what defenses might be available to you. If you get the complaint and you say no, that isn't who I believe is the proper plaintiff. I've been making my payments to some other party. I made a request to my servicer. They told me this other entity on the note holds the note. It's neither of these parties who are the plaintiff. I'm going to assert that defense and state that no, this isn't the proper plaintiff here. I have this letter saying that my servicer is XYZ and this other letter saying that the owner of the note is ABC. The plaintiff is neither of those parties. You have no standing to bring this lawsuit. How long have you been in this practice? About four years. In four years, how often have you seen that be the case? Well, as Justice points out, these are often pro se cases. No, I mean how often have you seen it in the facts of the case? I've been paying my $2,000 a month to Kansas City Federal and I have to cancel checks. This isn't Kansas City Federal that's saying I owe them money. Not often, Your Honor, because frankly it's not banks aren't going around just trying to foreclose on innocent individuals who they have no relationship with. They're not picking names out of a hat. Normally they have to pay, correct? Correct, Your Honor. Exactly. This was a motion for summary judgment, correct? Correct. And so the facts and the pleadings, or the allegations and the pleadings created a question of fact regarding whether there was or was not capacity. What undisputed documents did the court rely on to find that there was capacity? Well, they Did he make any findings? Because the reason I'm worried about it, and again I ask a lot of dumb questions, the reason I'm worried about it is everybody agrees that there was a debt of over $300,000 and that debt was not paid according to the terms of the note. Everybody agrees. And sometimes I think there's a tendency on the part of a trial judge to just overlook the capacity because by golly, these people didn't pay. So, what facts? What undisputed evidence of the record did the court rely on to find capacity? Well, again by attaching the note and the mortgage assignment to the complaint, of course that's prima facie evidence right there. Here it was unrebutted. The court may rely on that. Again, there is also the affidavit attaching the payment histories. Again, a copy of the note, which is endorsed. I don't think they're disputing that. And there's also, again I acknowledge as your honor points out that the record is not completely clear, but it does appear also that original documents were produced at the hearing for the motion for summary judgment. As far as is there a nice clean record where the trial judge lays out precisely what he's relying on? Not that I recall. Do you think that's good enough? Yes. Yes. I think under the case law it's clear that that is good enough. Particularly where as here the defendant did not put on any evidence whatsoever to rebut the plaintiff's evidence. Thank you. Thank you. Mr. Brooks, any rebuttals? A few points. First, Justice Wright, you did ask me whether or not the assignment was attached. I know counsel also indicated. Page 26 and 27. 28 actually. So it is a part of the complaint. I want to address something Justice Holdridge raised a moment ago about the allegation of not making the payments or this isn't the bank that I would make my payments to. In my experience, that does occur. And it's usually because the person to whom a borrower might be making their payments isn't necessarily the person who, quote, holds the note. It is quite frequent that say a U.S. bank or a Deutsche Bank or Wells Fargo will file a foreclosure and my client have never ever done business with the U.S. bank or Deutsche Bank. They did business with someone else. That's because someone else is collecting the money which certainly does bring to the forefront hey, I need to look into who you say you are. My client's never heard of you. You didn't borrow, you didn't loan the money, and you're not collecting it. So I think it is a prudent thing in the complaint that they actually lay out the facts. Unfortunately most times what we get is the legal conclusion that I'm mortgagee. And I know Aurora Bank takes the position, well that's an ultimate fact. I think that's really more of a legal conclusion because it's a defined term in the IMFL. There are a number of different fact patterns that could make you a mortgagee. Aurora Bank didn't tell us which one it was until actually its response brief misappealed. It was relying on the fact that it's an assignee of the original mortgagee of record. That's the first time it's been said. The response brief here misappealed. At the trial court, trial counsel says, oh we're the holder of the note. In fact, counsel just now makes reference to some assertion that maybe at the summary judgment hearing counsel had the original documents. As you point out, it doesn't say what he meant by original documents. And I actually just read the line myself. It is on page 27 of the report of proceedings. It doesn't say he has them here. It just says he has them. Were you there? I was. I was trial counsel that stepped in right after the motion for summary judgment was filed. I find that a very quizzical situation because as I point out in our reply brief and actually opening brief as well, after this is all said and done, a new plaintiff comes in, Nation Star, and says, hey, we took servicing of this loan and here's our assignment. Well, guess what? That assignment is dated well before the summary judgment hearing was had. Well before. And prepared by the very counsel who was representing Aurora Bank in the foreclosure. That was at Dutton and Dutton. That's Dutton and Dutton, Your Honor. So I have a problem with that because here he is telling the trial judge, we're the holder of the note at the same time he's already prepared an assignment to someone else who does not make their presence known until after the sale. That is the reason why these allegations have to be tested because quite often what's being sold to the trial judge in the complaint doesn't actually match the reality once it's tested. Had Judge Siegel permitted me to test these allegations at that time, Nation Star would have had to if they were playing the game fair, have raised his hand and said, no, no, no, no. We're claiming to be the note holder. Oh, well, you're claiming to be the note holder. Who's Aurora Bank and are they acting as your agent? Because now we're getting two completely different stories. And now on appeal, we're getting a third. Not that they were the note holder or that they were an agent for Nation Star. They're just simply the assinee of the mortgagee of record, Merz, for which we get no evidence that either Merz or it were acting as the agent of whoever the note holder is because we still don't know that when they filed the complaint. So I think that in a nutshell shows you that once my client denied that allegation, it became incumbent upon Aurora Bank to assert some set of facts to show that it really was or had the capacity at the time. The only thing they have is the affidavit of Ms. Clevenger, which makes no assertions about that at all. Who is Ms. Clevenger? What is she associated with? What business? She is purporting to be an employee of Aurora Bank, which is also I think a question because they allege that Aurora Loan Services is actually the servicer. And if there is going to be an agent for the holder, I'm going to assume it's the person who got collected my money. Not Aurora Bank. They didn't collect the money. So I take, again, issue with not being permitted to test these issues because there's conflict in the record. Who may have had capacity and Clevenger certainly doesn't clear it up. She just makes the legal conclusion that oh, we can enforce the note. Where are you getting that from? You're not a lawyer. You're not a judge. You're not giving us the contract that supposedly authorized you to do this. You're just giving us your legal opinion of what right your employer has, which in and of itself, if I can just finish the statement, that opinion in and of itself, if it was relied upon by the trial judge, I don't know what the trial court relied upon. If that was relied upon by the trial judge, it was error. Ms. Clevenger is not permitted to give legal opinion without the underlying facts that support it. And that would be required even if she was an expert witness, which I don't think her affidavit was intended to be expert opinion, but she certainly gave her legal opinion nonetheless. In conclusion, I think the trial court erred in approving the sale based upon a judgment of foreclosure where Aurora Bank had not shown it had the capacity to foreclose and we ask that this case be remanded for further proceedings. Thank you. Thank you. We thank both of you for your arguments this afternoon. We'll take the matter under advisement and we'll issue a written decision as quickly as possible. The court will stand in brief recess for a panel.